UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

TARIKA DANIELLE WILSON #562440  CIVIL ACTION NO. 19-cv-310 SEC P

VERSUS  JUDGE ELIZABETH E. FOOTE

FREDERICK BOUTTE  MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

  Tarika Danielle Wilson ("Petitioner") was charged with the first-degree murder of a child and faced the death penalty.  She entered a guilty plea in the Caddo Parish District Court to first-degree murder and received a natural life sentence.  After pursuing a post-conviction application in state court, Petitioner filed a federal habeas corpus petition.  The State argues that the petition is untimely, unexhausted/procedurally barred, and lacks merit. For the reasons that follow, it is recommended that the petition be denied for lack of merit.

**Relevant Facts**

  Petitioner entered a guilty plea, so the factual record regarding the crime is not extensive.  A Shreveport police officer testified at a preliminary examination (Tr. 22-31) that a former cellmate of Petitioner's had entrusted the care of her three children to Petitioner while the mother remained incarcerated.  Petitioner and her husband looked after the children.  One of the children, three-year-old R.M., was found to have been killed by blunt force trauma.  The officer said that she had extensive injuries from head to toe, some fresh and others in various stages of healing.  Petitioner's husband told the officer that

Petitioner beat R.M. with an extension cord until he commented that the child looked "wore out."  Petitioner agreed but continued the whipping. She later gave the child some water and took her to the hospital.

The police officer said that Petitioner first said that a man who claimed to be R.M.'s father came for her and presented official looking papers.  The man took the child and allegedly returned her hours later in a beaten condition.  The officer could not corroborate that claim.  Petitioner later claimed that she left the child with a man with whom she had been having an affair, suggesting he hurt the child.  Petitioner later told the officer that she had a narcotics problem, felt overwhelmed, and used a switch to beat the child.  At one point, she tried to give R.M. some water, but the child stopped breathing, and Petitioner pumped on her chest.

The State filed a notice of intent to seek the death penalty.  Petitioner was represented by three attorneys during the capital proceedings, and they negotiated a plea agreement by which Petitioner would avoid the death penalty by pleading guilty to first-degree murder and receiving a life sentence.  The six-page plea agreement (Tr. 1995-2000) contains provisions, individually initialed by Petitioner, that waived the right to appeal the conviction or sentence and acknowledged that by entering the plea Petitioner was waiving her right to a speedy jury trial with the assistance of counsel, the right to require a unanimous verdict from 12 jurors that she was guilty beyond a reasonable doubt, to confront and cross-examine witnesses, to present witnesses and other evidence in defense, and to exercise the privilege against self-incrimination with no inference of guilt allowed. The plea agreement also acknowledged that Petitioner could testify if she wished.

Petitioner also separately initialed several items in the plea agreement regarding her satisfaction with her current attorneys and the assistance that they provided.  She agreed that she had met with an investigator hired by her attorney, reviewed police reports and witness statements, and received an explanation of the elements of the offense.  She also stated in the plea agreement that she had discussions with her attorneys regarding the strengths and weaknesses in the prosecution's case and potential defenses.

Petitioner appeared in court before Judge Katherine Dorroh on the same day she signed the plea agreement.  Petitioner told the judge that she could read and write the English language, and she had two years of college education.  The court explained the possible sentences for the crime charged and asked if Petitioner had gone over with her attorneys what it meant to plead guilty and whether she was satisfied with their advice. Petitioner answered, "Yes."  Petitioner agreed that she had reviewed the written plea agreement and signed and initialed it after a review with her attorneys.

Petitioner acknowledged that she signed the plea agreement as a "free and voluntary act" and acknowledged that she was giving up the right to a trial that would require proof of guilt beyond a reasonable doubt.  Petitioner also acknowledged the waiver of her right to confront and cross-examine witnesses, compel witnesses to testify on her behalf, and exercise her right to remain silent at trial.  She also acknowledged that she gave up her right to appeal.  Petitioner said she had no questions about the matters reviewed by the judge, and she understood each of the rights she waived.

The prosecutor read a brief factual basis, and Petitioner stated that she agreed with the facts presented.  Defense counsel represented to the court that both members of the

team who were present in court had explained the terms of the agreement to Petitioner that morning.  They read each paragraph to her and asked if she understood it and agreed with it.  If so, she initialed the paragraph. If she did not agree with it, that was noted on the plea agreement.  (Some provisions in the agreement are scratched out.)

The court accepted the guilty plea, found that it was entered "knowingly and intelligently" and was a "voluntary waiver of the defendant's constitutional rights."  The court then imposed a mandatory life sentence and advised Petitioner of her right to file a post-conviction application within two years od the finality of her conviction.  Tr. 2002-11.

Petitioner did not file a direct appeal.  Approximately one year after her plea hearing, Petitioner filed a post-conviction application in state court.  It presented eight claims: (1) failure to preserve right to appeal; (2) involuntary guilty plea; (3) former defense counsel Ross Owen coerced a guilty plea by threats of the death penalty; (4) conflict of interest by Owen (who withdrew from the defense and joined the district attorney's office); (5) Brady violation based on the alleged conviction of innocent African-Americans by the district attorney's office; (6) conflict of interest based on Owen becoming an assistant district attorney; (7) ineffective assistance of counsel in failing to investigate and present a defense based on Battered Woman's Syndrome; and (8) ineffective assistance of counsel in failing to object to waiver of appeal rights in plea agreement.  Tr. 2018-20.

**Habeas Claims**

Petitioner's federal petition asserts claims that were not included in her post-conviction application.  Each boils down to an attack on her guilty plea and/or an argument

that she was not guilty.  Claim 1 asserts Petitioner was "instructed to hold witness against herself and sign a plea agreement" despite what she contends was evidence of other potential suspects, the fact that she sought out medical care for the victim, the fact that she was distraught during her interrogation, conflict of interest by her original defense attorney, and the like.  Claim 2 asserts that Petitioner was denied a right to a speedy public trial, the right to confront her accusers, and the right to call witnesses because defense counsel encouraged her to sign a plea agreement and waive her rights.  Claim 3 asserts an Eighth Amendment violation based on alleged coercion by defense counsel to sign the plea agreement.  Claim 4 asserts a Fourteenth Amendment violation based on the lack of a trial and the encouragement of defense counsel to enter the plea agreement.   A short memorandum offered by Petitioner does little to flesh out the listed claims.

**Habeas Analysis**

All four habeas claims should be denied on the merits because they were waived by the entry of a knowing and voluntary guilty plea.  The Supreme Court has held that a guilty plea represents a break in the chain of events that preceded it in the criminal process.  "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Tollette v. Henderson, 93 S.Ct. 1602, 1608 (1973).  "He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards" for effective assistance of counsel.  Id.  The Court explained that a guilty plea may not be vacated because the defendant was not

advised "of every conceivable constitutional plea in abatement he might have to the charge," and it was not sufficient to show that if counsel had pursued a certain inquiry it would have uncovered a possible defense.  Id.

The Fifth Circuit has said that it is "well-established that a valid guilty plea waives all non-jurisdictional defects, including an ineffective assistance of counsel claim, unless the ineffective assistance claim affects the voluntariness of the plea."  Wells v. Thaler, 460 Fed. Appx. 303, 309 (5th Cir. 2012), citing Smith v. Estelle, 711 F.2d 677, 682 (5th Cir. 1983) (claims of ineffective assistance of counsel for failure to review evidence, investigate witnesses or legality of arrest, and failure to find flaws in the prosecution's case were waived by guilty plea).  Claims for failure to file pretrial motions, failure to interview witnesses, failure to investigate and the like have all been denied when the complaining petitioner had entered a valid guilty plea.  Magallanes v. Scott, 43 F.3d 670 (5th Cir. 1994); Drake v. Davis, 2017 WL 3841198, *4 (N.D. Tex. 2017).

Petitioner asserts conclusory claims that she entered a plea agreement through unspecified coercion by defense counsel.  But "mere conclusory allegations do not raise a constitutional issue in a habeas proceeding."  Ross v. Estelle, 694 F.2d 1008, 1012 (5th Cir. 1983).  Moreover, the specific terms of the plea agreement, initialed and signed by Petitioner, and the thorough plea colloquy in state court provide no factual basis for these assertions.  To the contrary, the record demonstrates a knowing, voluntary, and intelligent entry of a guilty plea and the specific waiver of the civil rights Petitioner now seeks to exercise.  There is no hint of coercion by the lawyers who represented Petitioner and

successfully negotiated a plea agreement that avoided the risk of the death penalty in a case that presented heinous facts and a sympathetic child victim.

Some of Petitioner's claims concern former defense counsel Ross Owen.  Owen withdrew from the defense team in December 2015 on the grounds that his pro bono representation was no longer necessary and because he was closing his law office.  Tr. 1984-85.  Michael Thiel enrolled in January 2016 (Tr. 1987-89).  He served as lead counsel, with Megan Shapiro as associate counsel.  It was noted in a February 2016 motion that "representation by any prior counsel has ceased."  Tr. 1990.  The plea agreement was entered in April 2016, months after Owen withdrew.

Attorney Owen apparently became an assistant district attorney after he withdrew from the case, but there is no evidence that he participated in the prosecution of this case. Petitioner was well-represented by two other counsel during the months leading up to her plea agreement.  There is no factual basis for a claim of conflict or ineffective assistance stemming from Owen's prior representation, nor is there a shred of evidence to back Petitioner's conclusory claim the Owen coerced her into entering the plea agreement.  All claims related to Owen's representation lack merit.

Petitioner entered a valid guilty plea that waived all claims other than any ineffective assistance of counsel claim that affects the voluntariness of the plea.  Petitioner has made conclusory claims of coercion and conflicts, but there is no substantial evidence in the record, or even specific allegations of fact, to support such bold claims.  Everything that is in the record undermines the claims.  For these reasons, Petitioner's claims should be denied for lack of merit.

**Other Defenses**

    **A. Timeliness**

The State also asserts a timeliness defense.  It is not necessary to resolve it, but it will be addressed briefly for the benefit of any reviewing court that considers it as an alternative basis to deny relief.  The one-year federal limitations period generally begins to run on the "date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.  28 U.S.C. § 2244(d)(1)(A).  The State argues that this was the day the plea was entered and sentence handed down, because Petitioner waived the right to appeal.  But that is not well settled, and some courts hold that even with an appeal waiver the federal limitations period does not run until the time for commencing an appeal (30 days in Louisiana) expires. The thought is that the "federal courts should not 'delve into the merits' of a possible appeal to determine whether an appeal could have proceeded in light of a waiver of appeal," making the conviction final when the time for appeal expires.  <u>Martinez v. Dir., TDCJ-CID</u>, 2021 WL 1649054, \*2 (N.D. Tex. 2021),  quoting <u>Barnes v. Mossburger</u>, 2018 WL 1449398, \*2–3 (N.D. Tex. 2018).  Other court take a different approach; the issue need not be decided in this case.

    Affording Petitioner the more generous construction of finality, the federal limitations period would commence on Monday, May 16, 2016.  That would run until Petitioner filed her post-conviction application, which tolls the limitations period.  28 U.S.C. § 2244(d)(2).  Petitioner signed her post-conviction application on April 10, 2017.

Tr. 2021.  With the requirement of the mailbox rule[1] and assuming Petitioner tendered the application for mailing on that same day, about 329 days expired before the post-conviction application tolled the period.  The federal limitations period began to run again when the Supreme Court of Louisiana denied writs on January 18, 2019.  Tr. 2290.  <u>Lawrence v. Florida</u>, 127 S.Ct. 1079 (2007).

Petitioner signed her federal habeas corpus petition on February 18, 2019 (31 days later), but it was not received by the court until March 8, 2019.  Considering the mailbox rule that applies to federal habeas petitions, <u>Spotville v. Cain</u>, 149 F.3d 374 (5th Cir. 1998), and assuming Petitioner tendered her federal petition for mailing on the day she signed it, only 360 days would have expired before filing, and the petition would be timely.

The facts would have to be explored in greater detail to determine when the post-conviction application and petition were actually tendered to prison officials for mailing, which could affect these calculations, but it cannot be said from the information available that the petition is definitely untimely.[2]  The timeliness defense may also require resolution of the issue of when the conviction became final.  Another issue that would require resolution is Petitioner's invocation of equitable tolling based on mandatory evacuation of her prison due to flooding, and limited law resources at her temporary housing assignment.

---

[1] <u>LeBeuf v. Cooper</u>, 2007 WL 1010296 (5th Cir. 2007) ("We have extended the mailbox rule to determine the filing dates for Louisiana postconviction relief PCR applications.").
[2] Petitioner's IFP application (Doc. 2), filed with her petition, has an accounts officer statement dated February 13, 2019. The envelope in which the filings were mailed (Doc. 1-5) bears a postage meter label and a mail origination stamp from the prison, both dated March 6, 2019.

**B. Exhaustion/Procedural Bar**

The State also asserts that Petitioner failed to raise the federal claims in her post-conviction application, which means that they are unexhausted and now technically subject to a procedural bar because it is too late to return to state court and exhaust them.  Young v. Davis, 835 F.3d 520, 525 (5th Cir. 2016); Jones v. Jones, 163 F.3d 285, 296 (5th Cir. 1998).  However, procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance of trial counsel if, in the post-conviction proceeding, the prisoner did not have counsel.  Martinez v. Ryan, 132 S.Ct. 1309 (2012); Coleman v. Goodwin, 833 F.3d 537 (5th Cir. 2016).  This rule would have to be addressed and resolved to uphold a procedural bar defense.  That requires venturing into the merits; it is more certain and efficient to deny the claims for lack of merit.

Accordingly,

It is recommended that Petitioner's petition for writ of habeas corpus be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b).  Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 12th day of October, 2021.

Mark L. Hornsby
U.S. Magistrate Judge